Argued January 12, affirmed as modified May 2, 1978

REEDER, *Respondent,*
*v.*
KAY, *Defendant,*
*and*
LAWEE et al, *Appellants.*
(No. 416-210, SC 25105)

577 P2d 925

Kit A. Jensen, of Gilbertson, Brownstein, Sweeney & Kerr, Portland, argued the cause and filed briefs for appellant Lawee.

Gregory A. Hartman, of Willner, Bennett, Riggs & Skarstad, Portland, argued the cause and filed the brief for appellant Ozir.

Eugene M. Salute, Encino, California, filed the brief in propria persona.

Wayne C. Rapp, Hillsboro, argued the cause for respondent. On the brief was Paul M. Reeder, of Reeder & Rapp, Hillsboro.

Before Denecke, Chief Justice, Howell, Lent, Justices, and Gillette, Justice Pro Tempore.

DENECKE, C. J.

**DENECKE, C. J.**

This is a suit in equity seeking strict foreclosure of a land sale contract for 173 acres. The trial court made a decree of strict foreclosure and defendants appeal. We review de novo and affirm the decree of foreclosure.

The facts are greatly disputed and some of the testimony was incredible. Our view of the record, giving due weight to the findings of the trial court which heard and saw the witnesses, leads us to believe events occurred as set forth below.

The plaintiff, an elderly lady, decided to sell her 173-acre farm on Sauvie Island. One David Kay set out to raise sufficient funds to buy the farm. In August 1973 Kay, and others, made an offer to buy the land along with the farm machinery. The offer was accepted, and Kay signed an earnest money agreement. Plaintiff allowed Kay to enter into possession of the land upon the signing of the agreement. Kay was unable to actually close the deal, but he remained in possession of the farm.

A land sale contract was finally executed; however, David Kay was not named as a purchaser. The purchasers named were the four defendants, one of whom was Kay's brother. The contract was signed on July 8, 1974. It provided that defendants would pay plaintiff $40,000 cash upon closing of escrow. At that time defendants were to receive deeds to a 2-acre parcel which included plaintiff's home and another 7½-acre parcel. Plaintiff was also to transfer the farm machinery to the buyers. The machinery was valued at $25,000. Plaintiff was to be granted a life estate in the 2-acre parcel on which the house was located. The deed to the remainder of the land was to be placed in escrow. Defendants were to make quarterly payments of $10,000, starting 90 days after the close of escrow, to pay the balance of the purchase price, $315,000.

David Kay remained in possession of the land following execution of the contract. He also presented plaintiff with a cashier's check for $25,000 and his note for $15,000, payable 10 days after issue, as payment for the deed to the 7½-acre parcel. Plaintiff in turn placed a deed to the balance of the 173-acre tract in escrow, and executed a deed to the 2-acre parcel to defendants with a reserved life estate. She did not execute a deed to defendants for the 7½-acre parcel. Kay's note for $15,000 has never been paid.

If defendants had valid material obligations to pay plaintiff and they defaulted in the performance of those obligations, the trial court was correct in foreclosing plaintiff's vendor's lien. Defendants have paid nothing except the $25,000 and their principal defense is that they had no obligation to pay any of the amounts required by the contract because plaintiff had not conveyed the 7½-acre tract. Stated abstractly, defendants contend they were excused from their obligation to perform because the plaintiff defaulted in the performance of an obligation to defendants. Defendants term this defense "a total failure of consideration."

We hold that plaintiff's failure to deliver the deed to the 7½ acres, if a breach, is not such a material breach that it excuses defendants from their obligation to make the quarterly payments.

An immaterial breach by one party does not operate to discharge an obligation by the other party to perform. Section 274, Restatement, Contracts. We conclude the breach was not material. The defendants have suffered no ascertainable damage because of plaintiff's failure to deliver the deed. *See Sachs v. Precision Products,* 257 Or 273, 281, 476 P2d 199 (1970).

If defendants had performed as they contracted to do, they would be entitled to a conveyance of the entire tract, including the 7½ acres. The defendant Salute testified he put the clause in the contract requiring

deeds to the 7½ and 2½-acre tracts because he wanted to have title to some of the property in return for the down payment. But the down payment was never made. The trial court found the cashier's check for $25,000 which was paid for the defendants was in payment for the farm machinery and we agree. The other $15,000 which defendants were to pay was never paid.

Plaintiff also made a claim for injury to the property. During August 1974 David Kay had the United States Corps of Engineers dump 175,000 cubic yards of sand the Corps dredged from the Columbia River on about 20 acres of the property. Kay intended to sell the sand but found it was not suitable for sale. The land under the sand is now worthless. The trial court awarded plaintiff $30,000 for this injury.

The principal question on this claim is whether David Kay was acting as defendants' agent. The trial court found he was and we agree.

While inferences can be drawn from the evidence that Kay was acting within his authority as agent for the defendants in having the sand placed on the premises, the evidence is stronger that in having the sand placed Kay was acting within his apparent authority from defendants and plaintiff relied on Kay's apparent authority.

We have accepted the general rule that a principal is liable for injury to a third person because of acts of an agent which are within the apparent authority of the agent when the third person has acted in reliance on the apparent authority. *Seaside, City of v. Randles,* 92 Or 650, 669, 180 P 319 (1919).

The evidence is most convincing that Kay acted as defendant Salute's agent in making the land purchase. The relationship of Kay to the defendants Lawee and Ozir is more puzzling. They came from New York and California for the trial but appeared only to testify that their purported signatures on the contract were

not their signatures. They were not represented by counsel at trial. Their answers, however, admit they entered into the contract of sale with plaintiff. We are persuaded, as was the trial court, that Kay was their agent in making the purchase. We are also persuaded that Kay had the apparent authority of all of the defendants to manage the property, including having sand placed upon it.

Plaintiff relied upon this apparent authority. Plaintiff's representative became aware of the dumping of the sand at Kay's order and was justified in not objecting because of the apparent authority of Kay to act for the defendant purchasers.

■ The defendants argue they cannot be held liable because the defendants had not yet acquired the right to possession. Right to possession is immaterial if David Kay acted as defendants' agent.

Contrary to defendants' argument we find, as did the trial court, that the damage to plaintiff because of the dumping of the sand was in the amount of $30,000.

■ We also hold, contrary to defendants' contention, that the trial court was correct in ordering strict foreclosure rather than foreclosure by sale. The defendants have paid nothing on the purchase price and there is no evidence indicating any substantial rise in the price of the land.

■ The defendants Lawee and Ozir contend that they are entitled to a new trial because they were not represented by counsel except that the defendant Salute was their "defacto" counsel and his interest was in conflict with Lawee and Ozir. Mr. Salute is an attorney but not admitted to practice in Oregon.

The relationship of Mr. Salute to Messrs. Lawee and Ozir outside the courtroom is unknown, but in the courtroom it is clear Mr. Salute did not represent them. Under the circumstances of this case the trial court had no obligation to inform Messrs. Lawee and Ozir that they should have legal representation.

■ The contract provided for the award of attorney fees. The defendant Salute stipulated that the court could award reasonable attorney fees without the receipt of testimony. The court awarded $9,188. We conclude this was not excessive.

The defendants Lawee and Ozir did not stipulate that attorney fees could be awarded without the presentation of evidence. The plaintiff's attorney informally told the court the number of hours spent and his hourly charge, but did not offer himself as a witness nor put in any evidence of his services or their reasonable value. There was no basis for an award of attorney fees against the defendants Lawee and Ozir.

The decree is affirmed except that portion of the decree awarding $9,188 for attorney fees against the defendants Lawee and Ozir is reversed.